UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

FELIX CASTILLO, GUSTAVO CERVANTES,                    **DOCKET NO. 20-CV- _____**
JOSE COLLAZO, ANTHONY FORBES,
EVERTON HARRIS, ALONZO HERRERA,                       **COMPLAINT**
MICHAEL KERR and EZEKIEL MAYERS,
Individually and on behalf of All Other Persons
Similarly Situated                                    **JURY TRIAL**
                                                      **DEMANDED**

                          Plaintiffs,

        – against –

CORNELL PACE INC.,
MHPA 2A MAINTENANCE
LLC,
MOUNT HOPE MANAGEMENT INC.,
MOUNT HOPE HOUSING COMPANY INC.,
MOUNT HOPE PRESERVATION APARTMENTS
2A LLC,
PRESTIGE MANAGEMENT INC.,
THE MOUNT HOPE HOUSING COMPANY INC.,
FRITZ JEAN,
GLENROY FRAY,
JAMAL ALLAH,
CORNELL PACE,
JOHN DOE # 1, JOHN DOE # 2,
JOHN DOE # 3, JOHN DOE # 4, AND JOHN DOE # 5,
JOHN DOE # 6, JOINTLY AND SEVERALLY

                          Defendants.
-------------------------------------------------------------------------------X

        Plaintiffs Felix Castillo, Gustavo Cervantes, Jose Collazo, Anthony Forbes, Everton

Harris, Alonzo Herrera, Michael Kerr and Ezekiel Mayers ("Plaintiffs"), by and through their

attorneys, Rosen Law LLC, complaining of the Defendants herein, respectfully states as follows:

        1.      Plaintiffs demands a Jury Trial.

                      PARTIES, JURISDICTION AND VENUE

        2.      This action arises out of Defendants' failure to pay regular wages, and overtime

wages as required under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* and the various

wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 552 *et seq.* ("FLSA"), for liquidated damages and reasonable attorneys' fees under the FLSA and the New York Labor Law § 190, *et seq.* ("NYLL"), Defendants' failure to pay spread-of-hours pay as required by the NYLL, pre and post-judgment interest as provided by applicable laws and for failure to comply with the notice / recordkeeping requirements mandated by law.

3. That the United States District Court for the Southern District of New York has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the FLSA. This Court has supplemental jurisdiction over the New York State law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Plaintiffs allege on behalf of themselves and other similarly situated current and former employees of the Defendants, and who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are: (i) entitled to unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 et seq.

5. Plaintiffs allege pursuant to the FLSA that they are: (1) entitled to unpaid wages from Defendants for work that they did not receive overtime premium pay for, as required by law; (2) entitled to liquidated damages pursuant to FLSA 29 U.S.C. §§201, et.seq., (3) entitled to spread-of-hours pay as required by the New York Labor Laws, (4) pre and post-judgment interest as provided by applicable laws, (5) entitled to compensation for Defendants' failure to comply with the notice / recordkeeping requirements mandated by law and (6) reasonable attorneys' fees incurred by Plaintiffs in the prosecution of this action.

6.     Plaintiffs further complaint that they are entitled to back wages from Defendants for unpaid regular wages, overtime wages, spread of hour wages, as required by New York Labor Law §§ 650, et.seq., and the supporting New York State Department of Labor regulations.

7.     Plaintiffs further complain on behalf of themselves and similarly situated current and former employees of Defendants, pursuant to Fed.R.Civ.P. 23 and/or pursuant to 29 U.S.C. §216(b), that they are entitled to damages for violations of New York Wage Theft Prevention Act.

8.     This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§ 216(B), 217, 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1367.

9.     Venue is proper pursuant to 28 U.S.C. § 1391(b), because Defendants reside in the Southern District of New York, and the events giving rise to the claims herein occurred in this District. Defendants operated their business in the Southern District of New York during the relevant time periods.

10.    Defendant Cornell Pace Inc., Defendant MHPA 2A Maintenance LLC, Defendant Mount Hope Management Inc., Defendant Mount Hope Preservation Apartments 2A LLC, Defendant Prestige Management Inc., Defendant The Mount Hope Housing Company Inc., and Defendant MHPA 2A Maintenance LLC are collectively referred to as the "Corporate Defendants".

11.    Defendants Fritz Jean, Cornell Pace, Glenroy Fray, Jamal Allah, John Doe # 1, John Doe # 2, John Doe # 3, John Doe # 4, John Doe # 5 and John Doe # 6 are collectively referred to as the "Individual Defendants".

12.    Defendants are in the business of commercial building management, leasing, and

ownership in the City of New York area, specifically in Bronx County.

13.    Plaintiffs were employed by the Corporate Defendants as superintendents and/or building porters providing services to the Corporate Defendants at residential apartment buildings owned and/or managed by the Defendants, with such buildings located in the County of Bronx, City and State of New York (the "Buildings").

14.    Between approximately February 2018 and December 2018, Mount Hope Renaissance Housing Development Fund Corporation, Mount Hope Preservation Apartments 1A Housing Development Fund Company, Inc. and Mount Hope Preservation Apartments 2A Housing Development Fund Company, Inc. acquired some of the Buildings and who with the Corporate Defendants, massively fired all of the Plaintiffs who were superintendents and porters in the Buildings, some working for up to approximately 30 years and most of the Plaintiffs working in the Buildings for between 12 and 25 years.

15.    When Mount Hope Renaissance Housing Development Fund Corporation, Mount Hope Preservation Apartments 1A Housing Development Fund Company, Inc. and Mount Hope Preservation Apartments 2A Housing Development Fund Company, Inc. acquired the Buildings, the Corporate Defendants decided to fire all of the Plaintiffs who were Local 32BJ members, in order to hire new replacement workers at a much lower salary.

16.    Upon information and belief, Local 32BJ permitted the termination of the contracts for the Buildings and permitted the mass firing and termination of the Plaintiffs and many other superintendents and/or building porters who worked in the Buildings and buildings acquired by Mount Hope Preservation Apartments 1A Housing Development Fund Company, Inc., Mount Hope Preservation Apartments 2A Housing Development Fund Company, Inc. and Mount Hope Renaissance Housing Development Fund Corporation between approximately

February 2018 and December 2018.

17.     The mass firing of the Plaintiffs and other superintendents and/or building porters by the Corporate Defendants was solely in order to reduce its costs of the salaries of the superintendents and/or building porters who worked in the Buildings for many years.

18.     Due to the mass firing of Plaintiffs and others by the Corporate Defendants, Plaintiffs sought legal counsel and discovered that they were not paid proper wages and rightfully earned and due overtime pay for working in the Buildings.

19.     The defendants who paid Plaintiffs, had a maximum number of hours of overtime pay that they would pay to Plaintiffs, notwithstanding the fact that the Plaintiffs worked more overtime hours than they were actually paid for.

20.     During all relevant times, Plaintiffs were told that they had to write on time sheets that they worked less hours for overtime than actually worked by the Plaintiffs.

21.     During all relevant times, Plaintiffs were told that they had to write on time sheets that they worked two hours of overtime when they actually worked more than two hours of overtime.

22.     Plaintiffs performed all or some the following services for Defendants: cleaning the buildings' common areas, collecting and removing garbage, clearing snow and leaves, collecting tenants' rent payments, correcting code violations, and responding to tenants' complaints and requests, performing general building maintenance, including repairs of plumbing, radiators, and door locks.

23.     Plaintiffs regularly worked over 40 hours per week for Defendants, but were not lawfully compensated for all of the hours they worked, or for their overtime hours.

24.     Defendants required Plaintiffs to work overtime hours but caused the creation

and/or maintenance of business records to reflect less overtime hours than which the Defendants actually worked.

25.     Plaintiffs were told by agents and/or employees of certain Defendants not to record any time on the employer's records which would evidence the Plaintiffs working overtime, and that if they expected to be paid for all of the overtime hours that they worked, they would be fired and they would have to move out of the employer housing provided by the employer Defendant or Defendants.

26.     At all relevant times, Plaintiffs were and are residents and citizen of the State of New York, County of Bronx.

27.     At all relevant times, Plaintiff Felix Castillo was an individual residing in the County of Bronx, City and State of New York.

28.     At all relevant times, Gustavo Cervantes was an individual residing in the County of Bronx, City and State of New York.

29.     At all relevant times, Plaintiff Jose Collazo was an individual residing in the County of Bronx, City and State of New York.

30.     At all relevant times, Plaintiff Anthony Forbes was an individual residing in the County of Bronx, City and State of New York.

31.     At all relevant times, Plaintiff Everton Harris was an individual residing in the County of Bronx, City and State of New York.

32.     At all relevant times, Plaintiff Alonzo Herrera was an individual residing in the County of Bronx, City and State of New York.

33.     At all relevant times, Plaintiff Michael Kerr was an individual residing in the County of Bronx, City and State of New York.

34.     At all relevant times, Plaintiff Ezekiel Mayers was an individual residing in the County of Bronx, City and State of New York.

35.     Upon information and belief, Defendant Cornell Pace Inc., at all relevant times herein, was and is a corporation duly formed under, and existing by virtue of, the laws of the State of New York and having its principal place of business at 542 Main Street, New Rochelle, New York.

36.     Upon information and belief, Defendant Mount Hope Management Inc., at all relevant times herein, was and is a corporation duly formed under, and existing by virtue of, the laws of the State of New York and having its principal place of business at 2003-2005 Walton Avenue, Bronx, New York 10453.

37.     Upon information and belief, Defendant The Mount Hope Housing Company Inc., at all relevant times herein, was and is a corporation duly formed under, and existing by virtue of, the laws of the State of New York and having its principal place of business at 2003-2005 Walton Avenue, Bronx, New York 10453.

38.     Upon information and belief, Defendant Prestige Management Inc., at all relevant times herein, was and is a corporation duly formed under, and existing by virtue of, the laws of the State of New York and having its principal place of business at 1200 Zerega Avenue, 2nd Floor, Bronx, New York 10462.

39.     Upon information and belief, Defendant MHPA 2A Maintenance LLC, at all relevant times herein, was and is a limited liability company duly formed under, and existing by virtue of, the laws of the State of New York and having its principal place of business at 29-10 120th Street, Flushing, New York 11354.

40.     Upon information and belief, Defendant Mount Hope Preservation Apartments

2A LLC, at all relevant times herein, was and is a limited liability company duly formed under, and existing by virtue of, the laws of the State of New York and having its principal place of business at 29-10 120th Street, Flushing, New York 11354.

41.     Upon information and belief, Defendant Fritz Jean, at all relevant times herein, was and is a citizen and resident of the State of New York, Kings County.

42.     Upon information and belief, Defendant Cornell Pace, at all relevant times herein, was and is a citizen and resident of the State of New York, Kings County.

43.     Upon information and belief, Defendant Glenroy Fray, at all relevant times herein, was and is a citizen and resident of the State of New York, Kings County.

44.     Upon information and belief, Defendant Jamal Allah, at all relevant times herein, was and is a citizen and resident of the State of New York, Kings County.

45.     Upon information and belief, Defendant Fritz Jean was and is a manager of the Corporate Defendants responsible for the payrolls paid to Plaintiffs.

46.     Upon information and belief, Defendant Cornell Pace was and is a manager of the Corporate Defendants responsible for the payrolls paid to Plaintiffs.

47.     Upon information and belief, Defendant Glenroy Fray was and is a manager of the Corporate Defendants responsible for the payrolls paid to Plaintiffs.

48.     Upon information and belief, Defendant Jamal Allah, at all relevant times herein, was and is a citizen and resident of the State of New York, Kings County.

49.     Upon information and belief, Defendant Fritz Jean is an owner, director, officer, and/or manager of the Corporate Defendants, and as one of the ten largest shareholders is individually responsible for unpaid wages under the New York Business Corporation Law.

50.     Upon information and belief, Defendant Cornell Pace is an owner, director,

officer, and/or manager of the Corporate Defendants, and as one of the ten largest shareholders is individually responsible for unpaid wages under the New York Business Corporation Law.

51.     Upon information and belief, Defendant Glenroy Fray is an owner, director, officer, and/or manager of the Corporate Defendants, and as one of the ten largest shareholders is individually responsible for unpaid wages under the New York Business Corporation Law.

52.     Upon information and belief, Defendant Jamal Allah is an owner, director, officer, and/or manager of the Corporate Defendants, and as one of the ten largest shareholders is individually responsible for unpaid wages under the New York Business Corporation Law.

53.     Upon information and belief, Defendants are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the New York Labor Law.

54.     Defendant Fritz Jean, Defendant Glenroy Fray, Defendant Jamal Allah, Defendant Cornell Pace, Defendant John Doe # 1, John Doe # 2, John Doe # 3, John Doe # 4, John Doe # 5 and John Doe # 6, upon information and belief, are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the New York Labor Law.

55.     In addition to their regular work, Plaintiffs performed On-Call Work, where Plaintiffs were unable to use their personal time as they desired because they were required to be at the Buildings, on-call in the event of matters that were of emergency and urgent importance to Defendants.

56.     Plaintiffs are non-exempt employees under the FLSA and NYLL.

57.     Defendants were aware of their requirement to pay Plaintiffs the overtime premium of one and a half times their regular rate for each hour worked in excess of 40 hours per

week.

58.     Defendants intentionally and willfully violated the various laws which are alleged herein.

59.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA by failing to maintain proper and complete time sheets or payroll records.

60.     Defendants failed to take any actions to ascertain and confirm their duties and responsibilities regarding the proper payment of wages to Plaintiffs.

61.     At all relevant times herein, the individual Defendants were and are owners, directors, officers, members, principals, and/or other agents of the Corporate Defendant and conducted business as the Corporate Defendant.

62.     The individual Defendants were responsible for the management and handling of the payroll and human resource decisions of the Corporate Defendants, including decisions pertaining to the hiring and firing of Plaintiffs as superintendents or porters.

63.     At all relevant times herein, the individual Defendants had operational control of Plaintiff's employment by virtue of their financial and managerial control over the Corporate Defendant and Plaintiff's wages and responsibilities.

64.     To Plaintiffs' knowledge and based upon their personal interactions with the Individual Defendants, the Individual Defendants were the "decision makers" of the Corporate Defendants, and had control over every aspect of Plaintiffs' employment.

65.     At all relevant times herein, the Individual Defendants have conducted business as the Corporate Defendants.

66.     At all relevant times herein, the Individual Defendants have acted for and on

behalf of the Corporate Defendants, with the power and authority vested in him or her as an owner, officer, employee, and/or agent of the Corporate Defendants, and has acted in the course and scope of his or her duties and functions as an owner or agent of the Corporate Defendants.

67.     The Individual Defendants have willfully and intentionally acted to violate the laws, rules, regulations, statutes and wage orders alleged herein, and by doing so and by virtue of their positions as shareholders, directors, officers and/or managers of the Corporate Defendants, have assumed personal liability for Plaintiff's claims.

68.     As a matter of economic reality, all Defendants are joint employers of Plaintiffs; and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

69.     Upon information and belief, in conducting the affairs of the Corporate Defendants, the Individual Defendants failed to comply with the required corporate formalities, including recordkeeping, governance requirements, and other formalities.

70.     Upon information and belief, the Individual Defendants used the assets of the Corporate Defendants as their own, and otherwise commingled personal assets with the assets of the Corporate Defendants.

71.     As alleged herein, the Individual Defendants used the Corporate Defendants in order to circumvent a statute or statutes, or accomplish other wrongful acts or in furtherance of other wrongful or inequitable purposes.

72.     The Corporate Defendants are the alter-ego of the Individual Defendants; and, as will be established at trial, for the purpose of the claims made by Plaintiffs.

73.     Upon information and belief, the Individual Defendants are the owners, officers, directors and/or managing agents of the Corporate Defendants, who participated in

the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the New York Labor Law and are jointly and severally liable with the Corporate Defendants.

74.     Upon information and belief; JOHN DOE # 1, JOHN DOE # 2, JOHN DOE # 3, JOHN DOE # 4, JOHN DOE # 5 and JOHN DOE # 6, represents the officers, directors and/or managing agents of the Corporate Defendants, whose identities are unknown at this time and who participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the New York Labor Law and are jointly and severally liable with the Corporate Defendants.

75.     At all relevant times, Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that their employees handle goods and materials that have been manufactured or produced outside of New York (including tools, cleaning materials, maintenance equipment and other items) and have moved in interstate commerce, and Defendants are thus employers subject to the jurisdiction of the FLSA.

JURY DEMAND

76.     Plaintiffs demands a trial by jury of all issues so triable in this action.

COLLECTIVE ACTION ALLEGATIONS

77.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all persons who were formerly employed by Defendants at the Hotel at any time for at least the period within six years of the date of the filing of this action to

the entry of judgment in this case (the "Collective Action Period") (period tolled for failure to post notice indicating employees are entitled to minimum wages and overtime and for concealing violations and employees' rights under FLSA), who were non-exempt employees within the meaning of the FLSA and who were not paid minimum wages and/or overtime compensation at rates not less than one and one half times the regular rate of pay for hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

78.     This collective action class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are at least 20 such persons during the Collective Action Period, most of whom would not be likely to file individual suits because they lack the adequate financial resources, access to attorneys or knowledge of their claims.

79.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the field of employment law. Plaintiffs have no interests that are contrary to or in conflict with members of this collective action.

80.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. In addition, since the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

81.     Questions of law and fact common to the members of the collective action

predominate over questions that may affect individual members because Defendants have acted

on grounds generally applicable to all members. Among the common questions of law and fact

common to Plaintiffs and the Collective Action Members are:

a.      whether Defendants employed the Collective Action Members within the meaning of the FLSA;

b.      whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Collective Action Members;

c.      what proof of hours worked is sufficient where the employer fails in its duty to maintain accurate time records;

d.      whether Defendants had a policy whereby they failed to pay Plaintiffs and the Collective Action Members for worked performed before and/or after they "clocked in";

e.      whether Defendants had a policy whereby they failed to properly pay Plaintiffs and the Collective Action Members for performing "on-call work" and overtime;

f.      whether Defendants had a policy whereby they failed to pay Plaintiffs and the Collective Action Members the appropriate spread of hour wages for times when Plaintiffs and the Collective Action Members worked more than ten hours in one day;

g.      whether the methodology used by Defendants to pay Plaintiffs and the Collective Action Members complied with the requirements of the FLSA, NYLL and the Wage Theft Prevention Act;

h.      whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in violation of 29 C.F.R. § 516.4;

i.      whether Defendants failed to pay Collective Action Members minimum wages for hours worked and/or overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

j.      whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

k.      whether Defendants are liable for all damages claimed hereunder including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

l.      whether Defendants should be enjoined from such violations of the FLSA in the future.

## FACTS

82.     Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

83.     Plaintiffs bring their New York Labor Law claims on behalf of all persons who were formerly employed by Defendants at the Buildings at any time for at least the period within six years of the date of the filing of this action to the entry of judgment in this case (the "Class Period"), and who were non-exempt employees within the meaning of the New York Labor Law and have not been paid minimum wages and/or hourly wages for all hours worked by them, spread of hours pay for hours worked a spread of ten or more hours in a day, as well as overtime wages in violation of the New York Labor Law and/or have not received the notices required by the New York Wage Prevention Act (the "Class").

84.     The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are at least 20 members of the Class during the Class Period.

85.     The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of controversy, especially in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

86.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

87.     Plaintiffs have the same interests in this matter as all other members of the Class and Plaintiffs' claims are typical of the Class.

88.     Questions of law and fact common to the members of the Class predominate over any questions solely affecting the individual members of the Class, including, but not limited to:

a.     whether Defendants employed the Class members within the meaning of the FLSA;

b.     whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class;

c.     what proof of hours worked is sufficient where the employer fails in its duty to maintain accurate time records;

d.     whether Defendants had a policy whereby they failed to pay Plaintiffs and the Class for worked performed before and/or after they "clocked in";

e.     whether Defendants had a policy whereby they failed to properly pay Plaintiffs and the Class for performing "on-call" services;

f.     whether Defendants had a policy whereby they failed to pay Plaintiffs and the Class the appropriate spread of hour wages for times when Plaintiffs and the Class worked more than ten hours in one day;

g.     whether the methodology used by Defendants to pay Plaintiffs and the Class complied with the requirements of the NYLL and the Wage Theft Prevention Act;

h.     whether Defendants failed and/or refused to pay the members of the Class, minimum wages and/or hourly wages for all hours worked by them, an extra hour of pay for each day on which members of the Class worked a spread of ten or more hours, as well as premium pay for hours worked in excess of forty hours per workweek within the meaning of the New York Labor Law;

i.     whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, interest, costs and disbursements and attorneys' fees;

j.     whether Defendants failed to provide the notices and wage statements as required by the New York Wage Theft Prevention Act; and

k.     whether Defendants should be enjoined from such violations of the New York Labor Law in the future.

89.     Plaintiffs know of no difficulty that will be encountered in the management of this

litigation that would preclude its maintenance as a class action.

90.     Defendants are in the business of commercial building ownership, management and leasing of residential apartments in the Buildings.

91.     Plaintiffs were engaged in commerce and/or in the production of goods for commerce.

92.     At all relevant times, a substantial part of Plaintiffs' work was related to interstate commerce.

93.     At all relevant times, Defendants operated an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

94.     At all relevant times, Defendants were engaged in commerce or in the production of goods for commerce.

95.     At all relevant times, Defendants had employees (a) engaged in commerce and/or in the production of goods for commerce and/or (b) who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce.

96.     At all relevant times, Defendants had an annual gross volume of sales or business of at least $500,000.00.

97.     At certain relevant times, Plaintiffs were superintendent and porters, members of Local 32BJ of the Service Employees International Union.

98.     Upon information and belief, prior to July 2018, Corporate Defendants terminated their contract or contracts with Local 32BJ and no longer were bound by a union contract for the superintendents and porters working at the residential apartment buildings owned and/or managed by Defendants, in which the Plaintiffs were superintendents and porters.

99.     In or about June 2018 through August 2018, Defendants began a course of

terminating all or most of the employees that worked for them that had been previously been represented by Local 32BJ.

100.    In an effort to reduce its payroll costs, Corporate Defendants refused to pay overtime wages to Plaintiffs for a period of time from approximately August 2013 to the time that the Plaintiffs employment was terminated.

101.    Corporate Defendants engaged in a course of conduct to terminate the Plaintiffs and many other former employees who had been employed by Corporate Defendants and/or their predecessors over a period up to approximately 30 years in an effort to hire less expensive labor.

102.    In an effort to reduce its payroll costs, Corporate Defendants terminated its contract with Local 32BJ in order to terminate the Plaintiffs who were formerly represented by Local 32BJ and then Corporate Defendants hired replacement superintendents and porters at a much lower cost than Defendants had to pay to Plaintiffs as members of Local 32BJ

103.    Through the date that Plaintiffs employment were terminated, the Corporate Defendants were deducting union due for membership in Local 32BJ, even though Local 32BJ no longer had a contract or contracts with Defendants and no longer represented or bargained for the Plaintiffs in connection with Plaintiffs jobs as superintendents and porters for the Corporate Defendants.

104.    Upon information and belief, while Local 32BJ has an aggressive campaign to unionize residential apartment buildings in New York City, Local 32BJ worked with and cooperated with Defendants to terminate the Local 32BJ contracts to no longer represent the Plaintiffs as superintendents and porters, so that the Defendants could then terminate the high wage superintendents and porters Plaintiffs and replace them with lower wage superintendents and porters.

105.    Plaintiffs worked more than forty hours in certain weeks and were not paid by Corporate Defendants for overtime hours worked in excess of forty hours in those certain weeks.

106.    During the time Plaintiffs were employed at the Buildings, Corporate Defendants regularly required their employees to work in excess of forty hours per week without paying them the proper overtime and spread of hours compensation.

107.    Upon information and belief, Plaintiffs were directed by certain Defendants not to put all of the overtime hours on their weekly timesheets, because Plaintiffs were told that they would not be paid for more than approximately 2 hours of overtime on a Saturday or Sunday, even if they worked more hours.

108.    If a Plaintiff worked 6 hours overtime on a Saturday, after working forty or more hours during Monday through Friday, Plaintiffs were told that they were NOT to state all of the hours on their timesheet for working overtime and they were directed how many hours they were allowed to claim for overtime, even though the number of hours that they were told to write on their timesheets were less than the actual number of hours that the Plaintiffs actually worked.

109.    At all relevant times, Corporate Defendants maintained a policy and practice of not paying Plaintiffs and other employees the required overtime pay mandated by federal and state law.

110.    At all relevant times, Corporate Defendants maintained a policy and practice of requiring Plaintiffs and other employees at the Buildings to work in excess of forty hours per week without paying them the overtime compensation mandated by federal and state law.

111.    At all relevant times, Corporate Defendants maintained a policy and practice of requiring Plaintiffs and other employees at the Buildings to be "on-call" to perform work at the Buildings, and when they were required to work during the "on-call" time periods, after working

40 hours per week, Corporate Defendants failed to pay Plaintiffs compensation mandated by federal and state law.

112.    At all relevant times, Corporate Defendants maintained a policy and practice of requiring Plaintiffs and other employees at the Buildings to work a day in which their spread of hours exceeded ten hours without paying them the spread of hours compensation mandated by state law.

113.    Corporate Defendants did not inform their employees of their right to minimum wages and their right to be paid time and one half of their regular hourly wage for their hours worked over 40 hours in a week.

114.    Corporate Defendants failed to display posters and any other written notices at the Buildings addressing minimum wage, overtime and related pay practices required under federal and state law.

115.    During the time that Plaintiffs were employed at the Buildings, Corporate Defendants required Plaintiffs to work in excess of the time that they "clocked in," thus requiring Plaintiffs to work more hours than the hours that they supposedly worked.

116.    During the time Plaintiffs were employed at the Buildings, Defendants did not make any efforts to accurately track the hours worked.

117.    Defendants had a corporate policy or practice of minimizing labor costs through the avoidance of payment of proper wages to employees.

118.    Upon information and belief, Defendants' practice of not accurately documenting the work hours and/or pay of employees was designed to disguise and/or conceal (1) the actual number of hours worked by the employees, (2) the amount paid to the employees for minimum wage, overtime and spread of hours, and (3) Defendants' failure to comply with wage

requirements mandated under federal and state law.

119.    Upon information and belief, Defendants' practice of not accurately documenting the work hours and/or pay of employees was designed to take advantage of the lack of education and/or sophistication of their employees, including Plaintiffs, with respect to federal and state wage laws.

120.    During the time Plaintiffs were employed at the Buildings, Defendants never provided some the Plaintiffs with written notice in English and Spanish (the primary language for certain of the Plaintiff) of the hours they worked or any of the other information required by NYLL § 195(1).

121.    During the time Plaintiffs were employed at the Buildings, Defendants never provided them with an accurate statement of wages they were entitled to or any of the information required by NYLL § 195(3).

122.    During the relevant time period, there were multiple other employees who did work similar to Plaintiffs.

123.    During the relevant time period, these other employees of Defendants worked more than 40 hours a week for Defendants, but were not paid time and one half for the hours worked over forty.

124.    During the relevant time period, these other employees were not paid wages for all hours worked, were not paid wages for all their hours worked and were not paid for all hours worked.

125.    During the relevant time period, these other employees worked a spread of ten hours or more per day and have not been paid an extra hour of pay for days for which they worked a spread of at least ten hours.

126.    During the relevant time period, Plaintiffs and the other employees were not specifically notified by Defendants of the regular pay designated by Defendants, Defendants' name, address and principal place of business and telephone number and the specific rate of pay as required by the New York Wage Theft Prevention Act.

127.    During the relevant time period, Plaintiffs and other employees were not given any specific notice of this information to sign and have not signed any such notice.

128.    Plaintiffs consent in writing to be parties to this action pursuant to 29 U.S.C. § 216(b). The named Plaintiffs' written consents are attached hereto and incorporated by reference.

<u>PLAINTIFF EVERTON HARRIS</u>

129.    Defendants failed to pay overtime wages as required under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* and the various wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 552 *et seq.* to Plaintiff Everton Harris.

130.    Plaintiff Everton Harris is entitled to receive liquidated damages and reasonable attorneys' fees under the FLSA and the New York Labor Law § 190, *et seq.* ("NYLL"),

131.    Defendants failed to pay spread-of-hours pay as required by the NYLL to Plaintiff Everton Harris.

132.    Plaintiff Everton Harris is entitled to receive pre and post-judgment interest as provided by applicable laws.

133.    Defendants failed to comply with the notice / recordkeeping requirements mandated by law and Plaintiff Everton Harris is entitled to recover from Defendants for same.

134.    Plaintiff Everton Harris was terminated from employment by, upon information and belief, the Corporate Defendants on or about July 1, 2018.

135.    Plaintiff Everton Harris had been the superintendent of the residential apartment building located at 1734 and 1735 Townsend Avenue, Bronx, New York, owned by Townsend Avenue Enterprises Limited Partnership and Mount Hope Preservation Apartments 1A Housing Development Fund Company, Inc. and managed by the Corporate Defendants for approximately eighteen (18) years until approximately July 1, 2018.

136.    From approximately 1999 to July 1, 2018, Plaintiff Everton Harris had been employed by the Corporate Defendants working in various capacities.

137.    Upon information and belief, between January 5, 2014 and the date of his termination of employment, Plaintiff Everton Harris was employed by and/or managed by the Corporate Defendants.

138.    The reasons why Defendants terminated Plaintiff Everton Harris was pretextual and retaliatory.

139.    Plaintiff Everton Harris did not fail to follow directions and supervision from his building agent, did not fail to complete tasks within the required time, and did not fail to follow directions to complete tasks within the required time.

140.    Plaintiff Everton Harris was terminated because he was not paid overtime wages that he was entitled to receive, was having illegal payroll deductions taken from his pay, and Defendants desired to hire non-union, lower paid employees to do the work that Plaintiff Everton Harris performed for Defendants.

141.    Corporate Defendants retaliated against Plaintiff Everton Harris for asking to be paid for overtime wages that he was not paid for the work, labor and services that Plaintiff Everton Harris provided.

142.    Plaintiff Everton Harris was asked to work and did in fact work at times more

than eight hours per day and was on -call for problems at the building that he was the superintendent of and at times had to work after he had worked eight hours in the same day.

143.    Defendants did not pay Plaintiff Everton Harris for the overtime hours that he worked beyond forty hours per week and did not pay Plaintiff Everton Harris for the times when he was on-call and had to perform work, labor and services for Defendants beyond the forty hours per week that he was paid to work.

144.    Plaintiff Everton Harris was not paid for holiday time and actual overtime hours worked.

145.    Plaintiff Everton Harris was told by Jamal Allah, and other individuals working for Corporate Defendants and by agents of Corporate Defendants, that he was not to record actual hours worked, but that no matter how many hours in excess of forty hours that Plaintiff Everton Harris would only be paid for four hours overtime even if he worked more hours, which he did work. Defendants wrongfully deducted Local 32BJ dues from the paychecks of Plaintiff Everton Harris when in fact Defendants no longer had a contract with Local 32BJ and Local 32BJ were not representing Plaintiff Everton Harris.

146.    Plaintiffs were not provided with any health insurance benefits or other union benefits by Local 32BJ, although Defendants deducted Local 32BJ dues from the paychecks of Plaintiff Everton Harris.

### PLAINTIFF ANTHONY FORBES

147.    Defendants failed to pay overtime wages as required under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* and the various wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 552 *et seq.* to Plaintiff Anthony

Forbes.

148.    Plaintiff Anthony Forbes is entitled to receive liquidated damages and reasonable attorneys' fees under the FLSA and the New York Labor Law § 190, *et seq.* ("NYLL"),

149.    Defendants failed to pay spread-of-hours pay as required by the NYLL to Plaintiff Anthony Forbes.

150.    Plaintiff Anthony Forbes is entitled to receive pre and post-judgment interest as provided by applicable laws.

151.    Defendants failed to comply with the notice / recordkeeping requirements mandated by law and Plaintiff Anthony Forbes is entitled to recover from Defendants for same.

152.    Plaintiff Anthony Forbes was terminated from employment by, upon information and belief, the Corporate Defendants on or about November 9, 2018.

153.    Plaintiff Anthony Forbes had been the superintendent of the residential apartment building located at 2055 Davidson Avenue and 2059 Davidson Avenue, Bronx, New York, owned by 2055-61 Davidson Avenue Housing Development Fund Corporation and Mount Hope Preservation Apartments 2A Housing Development Fund Company, Inc. and managed by the Corporate Defendants, for approximately thirteen (13) years until approximately November 9, 2018, each building containing approximately twenty (20) residential apartments.

154.    Upon information and belief, between January 5, 2014 and the date of his termination of employment, Plaintiff Anthony Forbes was employed by and/or managed by the Corporate Defendants.

155.    The reasons why Defendants terminated Plaintiff Anthony Forbes was pretextual and retaliatory.

156.    Plaintiff Anthony Forbes did not fail to follow directions and supervision from his

building agent, did not fail to complete tasks within the required time, and did not fail to follow directions to complete tasks within the required time.

157.    Plaintiff Anthony Forbes was terminated because he was not paid overtime wages that he was entitled to receive, was having illegal payroll deductions taken from his pay, and Defendants desired to hire non-union, lower paid employees to do the work that Plaintiff Anthony Forbes performed for Defendants.

158.    Plaintiff Anthony Forbes was asked to work and did in fact work at times more than eight hours per day and was on call for problems at the building that he was the superintendent of and at times had to work after he had worked eight hours in the same day.

159.    Defendants did not pay Plaintiff Anthony Forbes for the overtime hours that he worked beyond forty hours per week and did not pay Plaintiff Anthony Forbes for the times when he was on-call and had to perform work, labor and services for Defendants beyond the forty hours per week that he was paid to work.

160.    Plaintiff Anthony Forbes was not paid for holiday time and actual overtime hours worked.

161.    Plaintiff Anthony Forbes was told by Jamal Allah, and other individuals working for Corporate Defendants and by agents of Corporate Defendants, that he was not to record actual hours worked, but that no matter how many hours in excess of forty hours that Plaintiff Anthony Forbes would only be paid for four hours overtime even if he worked more hours, which he did work.

162.    Defendants wrongfully deducted Local 32BJ dues from the paychecks of Plaintiff Anthony Forbes when in fact Defendants no longer had a contract with Local 32BJ and Local 32BJ were not representing Plaintiff Anthony Forbes.

163.    Plaintiffs were not provided with any health insurance benefits or other union benefits by Local 32BJ, although Defendants deducted Local 32BJ dues from the paychecks of Plaintiff Anthony Forbes.

<u>PLAINTIFF GUSTAVO CERVANTES</u>

164.    Defendants failed to pay overtime wages as required under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* and the various wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 552 *et seq.* to Plaintiff Gustavo Cervantes.

165.    Plaintiff Gustavo Cervantes is entitled to receive liquidated damages and reasonable attorneys' fees under the FLSA and the New York Labor Law § 190, *et seq.* ("NYLL"),

166.    Defendants failed to pay spread-of-hours pay as required by the NYLL to Plaintiff Gustavo Cervantes.

167.    Plaintiff Gustavo Cervantes is entitled to receive pre and post-judgment interest as provided by applicable laws.

168.    Defendants failed to comply with the notice / recordkeeping requirements mandated by law and Plaintiff Gustavo Cervantes is entitled to recover from Defendants for same.

169.    Plaintiff Gustavo Cervantes was terminated from employment by, upon information and belief, the Corporate Defendants on or about November 1, 2018.

170.    Plaintiff Gustavo Cervantes had been the superintendent of the residential apartment building located at 1982 Walton Avenue, Bronx, New York, such building containing approximately thirty seven (37) residential apartments, for approximately twenty eight and one

half years (28 ½ ) years.

171.   Upon information and belief, between January 5, 2014 and the date of his termination of employment, Plaintiff Gustavo Cervantes was employed by and/or managed by the Corporate Defendants

172.   The reasons why Defendants terminated Plaintiff Gustavo Cervantes was pretextual and retaliatory.

173.   Plaintiff Gustavo Cervantes did not fail to follow directions and supervision from his building agent, did not fail to complete tasks within the required time, and did not fail to follow directions to complete tasks within the required time.

174.   Plaintiff Gustavo Cervantes was terminated because he was not paid overtime wages that he was entitled to receive, was having illegal payroll deductions taken from his pay, and Defendants desired to hire non-union, lower paid employees to do the work that Plaintiff Gustavo Cervantes performed for Defendants.

175.   Plaintiff Gustavo Cervantes was asked to work and did in fact work at times more than eight hours per day and was on call for problems at the building that he was the superintendent of and at times had to work after he had worked eight hours in the same day.

176.   Defendants did not pay Plaintiff Gustavo Cervantes for the overtime hours that he worked beyond forty hours per week and did not pay Plaintiff Gustavo Cervantes for the times when he was on-call and had to perform work, labor and services for Defendants beyond the forty hours per week that he was paid to work.

177.   Plaintiff Gustavo Cervantes was not paid for holiday time and actual overtime hours worked.

178.   Plaintiff Gustavo Cervantes was told by Jamal Allah, and other individuals

working for Corporate Defendants and by agents of Corporate Defendants, that he was not to record actual hours worked, but that no matter how many hours in excess of forty hours that Plaintiff Gustavo Cervantes would only be paid for possibly four hours overtime on holidays even if he worked more hours, which he did work.

179.    Defendants wrongfully deducted Local 32BJ dues from the paychecks of Plaintiff Gustavo Cervantes when in fact Defendants no longer had a contract with Local 32BJ and Local 32BJ were not representing Plaintiff Gustavo Cervantes.

180.    Plaintiffs were not provided with any health insurance benefits or other union benefits by Local 32BJ, although Defendants deducted Local 32BJ dues from the paychecks of Plaintiff Gustavo Cervantes.

<u>PLAINTIFF JOSE COLLAZO</u>

181.    Defendants failed to pay overtime wages as required under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* and the various wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 552 *et seq.* to Plaintiff Jose Collazo.

182.    Plaintiff Jose Collazo is entitled to receive liquidated damages and reasonable attorneys' fees under the FLSA and the New York Labor Law § 190, *et seq.* ("NYLL"),

183.    Defendants failed to pay spread-of-hours pay as required by the NYLL to Plaintiff Jose Collazo.

184.    Plaintiff Jose Collazo is entitled to receive pre and post-judgment interest as provided by applicable laws.

185.    Defendants failed to comply with the notice / recordkeeping requirements mandated by law and Plaintiff Jose Collazo is entitled to recover from Defendants for same.

186.    Plaintiff Jose Collazo retired from employment on or about June 29, 2018 and was previously employed by, upon information and belief, the Corporate Defendants during the relevant periods as set forth in this complaint.

187.    Plaintiff Jose Collazo had been the superintendent of the residential apartment building located at 1775 Walton Avenue, Bronx, New York, containing approximately sixty three (63) residential apartments, and then was reassigned to work at a building located at 1650 Topping Avenue, Bronx, New York effective immediately by notice dated May 30, 2018 from Mount Hope Housing Company, Inc.

188.    Upon information and belief, between January 5, 2014 and the date of his termination of employment, Plaintiff Jose Collazo was employed by and/or managed by the Corporate Defendants.

189.    The reasons why Defendants required Plaintiff Jose Collazo to be reassigned to a different building that he was generally responsible for was pretextual and retaliatory in order to have Plaintiff Jose Collazo quit his employment.

190.    In order to get Plaintiff Jose Collazo to retire and/or quit employment, Defendants decided to terminate Plaintiff Jose Collazo's employment at the building located at 1775 Walton Avenue, Bronx, New York, and reassign him to work at a building located at 1650 Topping Avenue, Bronx, New York knowing that Plaintiff Jose Collazo did not and would not accept the job at the building located at 1650 Topping Avenue, Bronx, New York.

191.    Plaintiff Jose Collazo was to be reassigned because he was not paid overtime wages that he was entitled to receive, was having illegal payroll deductions taken from his pay, and Defendants desired to hire non-union, lower paid employees to do the work that Plaintiff Jose Collazo performed for Defendants.

192.     Plaintiff Jose Collazo was asked to work and did in fact work at times more than eight hours per day and was on call for problems at the building that he was the superintendent of and at times had to work after he had worked eight hours in the same day.

193.     Defendants did not pay Plaintiff Jose Collazo for the overtime hours that he worked beyond forty hours per week and did not pay Plaintiff Jose Collazo for the times when he was on-call and had to perform work, labor and services for Defendants beyond the forty hours per week that he was paid to work.

194.     Plaintiff Jose Collazo was not paid for holiday time and actual overtime hours worked.

195.     Plaintiff Jose Collazo was told by Jamal Allah and Glenroy Fray, and other individuals working for Corporate Defendants and by agents of Corporate Defendants, that he was not to record actual hours worked, but that no matter how many hours in excess of forty hours that Plaintiff Jose Collazo would only be paid for possibly four hours overtime on holidays even if he worked more hours, which he did work.

196.     Defendants wrongfully deducted Local 32BJ dues from the paychecks of Plaintiff Jose Collazo when in fact Defendants no longer had a contract with Local 32BJ and Local 32BJ were not representing Plaintiff Jose Collazo.

197.     Plaintiffs were not provided with any health insurance benefits or other union benefits by Local 32BJ, although Defendants deducted Local 32BJ dues from the paychecks of Plaintiff Jose Collazo.

## PLAINTIFF FELIX CASTILLO

198.     Defendants failed to pay overtime wages as required under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* and the various wage orders promulgated thereunder by

the U.S. Department of Labor and codified at 29 C.F.R. § 552 *et seq.* to Plaintiff Felix Castillo.

199.    Plaintiff Felix Castillo is entitled to receive liquidated damages and reasonable attorneys' fees under the FLSA and the New York Labor Law § 190, *et seq.* ("NYLL"),

200.    Defendants failed to pay spread-of-hours pay as required by the NYLL to Plaintiff Felix Castillo.

201.    Plaintiff Felix Castillo is entitled to receive pre and post-judgment interest as provided by applicable laws.

202.    Defendants failed to comply with the notice / recordkeeping requirements mandated by law and Plaintiff Felix Castillo is entitled to recover from Defendants for same.

203.    Plaintiff Felix Castillo was terminated from employment by, upon information and belief, the Corporate Defendants on or about November 9, 2018.

204.    Plaintiff Felix Castillo had been the superintendent of the residential apartment building located at 1910 Morris Avenue and 1870 Morris Avenue, Bronx, New York, such buildings containing approximately thirteen (13) and twenty five (25) residential apartments respectively, for approximately twenty five (25) years.

205.    Upon information and belief, between January 5, 2014 and the date of his termination of employment, Plaintiff Felix Castillo was employed by and/or managed by the Corporate Defendants.

206.    The reasons why Defendants terminated Plaintiff Felix Castillo was pretextual and retaliatory.

207.    Plaintiff Felix Castillo did not fail to follow directions and supervision from his building agent, did not fail to complete tasks within the required time, and did not fail to follow directions to complete tasks within the required time.

208.    Plaintiff Felix Castillo was terminated because he was not paid overtime wages that he was entitled to receive, was having illegal payroll deductions taken from his pay, and Defendants desired to hire non-union, lower paid employees to do the work that Plaintiff Felix Castillo performed for Defendants.

209.    Plaintiff Felix Castillo was asked to work and did in fact work at times more than eight hours per day and was on call for problems at the building that he was the superintendent of and at times had to work after he had worked eight hours in the same day.

210.    Defendants did not pay Plaintiff Felix Castillo for the overtime hours that he worked beyond forty hours per week and did not pay Plaintiff Felix Castillo for the times when he was on-call and had to perform work, labor and services for Defendants beyond the forty hours per week that he was paid to work.

211.    Plaintiff Felix Castillo was not paid for holiday time and actual overtime hours worked.

212.    Plaintiff Felix Castillo was told by Jamal Allah, and other individuals working for Corporate Defendants and by agents of Corporate Defendants, that he was not to record actual hours worked, but that no matter how many hours in excess of forty hours that Plaintiff Felix Castillo would only be paid for possibly four hours overtime on holidays even if he worked more hours, which he did work.

213.    Defendants wrongfully deducted Local 32BJ dues from the paychecks of Plaintiff Felix Castillo when in fact Defendants no longer had a contract with Local 32BJ and Local 32BJ were not representing Plaintiff Felix Castillo.

214.    Plaintiffs were not provided with any health insurance benefits or other union benefits by Local 32BJ, although Defendants deducted Local 32BJ dues from the paychecks of

Plaintiff Felix Castillo

<u>PLAINTIFF EZEKIEL MAYERS</u>

215.    Defendants failed to pay overtime wages as required under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* and the various wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 552 *et seq.* to Plaintiff Ezekiel Mayers.

216.    Plaintiff Ezekiel Mayers is entitled to receive liquidated damages and reasonable attorneys' fees under the FLSA and the New York Labor Law § 190, *et seq.* ("NYLL"),

217.    Defendants failed to pay spread-of-hours pay as required by the NYLL to Plaintiff Ezekiel Mayers.

218.    Plaintiff Ezekiel Mayers is entitled to receive pre and post-judgment interest as provided by applicable laws.

219.    Defendants failed to comply with the notice / recordkeeping requirements mandated by law and Plaintiff Ezekiel Mayers is entitled to recover from Defendants for same.

220.    Plaintiff Ezekiel Mayers was terminated from employment by, upon information and belief, by Defendant Mount Hope Management Inc.

221.    Plaintiff Ezekiel Mayers had been the superintendent of the residential apartment building located at 1800 Davidson Avenue and 1789 Davidson Avenue, Bronx, New York, for approximately twelve (12) years.

222.    Upon information and belief, between January 5, 2014 and the date of his termination of employment, Plaintiff Ezekiel Mayers was employed by and/or managed by the Corporate Defendants.

223.    The reasons why Defendants terminated Plaintiff Ezekiel Mayers was pretextual and retaliatory.

224.    Plaintiff Ezekiel Mayers did not fail to follow directions and supervision from his building agent, did not fail to complete tasks within the required time, and did not fail to follow directions to complete tasks within the required time.

225.    Plaintiff Ezekiel Mayers was terminated because he was not paid overtime wages that he was entitled to receive, was having illegal payroll deductions taken from his pay, and Defendants desired to hire non-union, lower paid employees to do the work that Plaintiff Ezekiel Mayers performed for Defendants.

226.    Plaintiff Ezekiel Mayers was asked to work and did in fact work at times more than eight hours per day and was on call for problems at the building that he was the superintendent of and at times had to work after he had worked eight hours in the same day.

227.    Defendants did not pay Plaintiff Ezekiel Mayers for the overtime hours that he worked beyond forty hours per week and did not pay Plaintiff Ezekiel Mayers for the times when he was on-call and had to perform work, labor and services for Defendants beyond the forty hours per week that he was paid to work.

228.    Plaintiff Ezekiel Mayers was not paid for holiday time and actual overtime hours worked.

229.    Plaintiff Ezekiel Mayers was told by Jamal Allah and/or Glenroy Fray, and other individuals working for Corporate Defendants and by agents of Corporate Defendants, that he was not to record actual hours worked, but that no matter how many hours in excess of forty hours that Plaintiff Ezekiel Mayers would only be paid for possibly four hours overtime on holidays even if he worked more hours, which he did work.

230.    Defendants wrongfully deducted Local 32BJ dues from the paychecks of Plaintiff Ezekiel Mayers when in fact Defendants no longer had a contract with Local 32BJ and Local

32BJ were not representing Plaintiff Ezekiel Mayers.

231.    Plaintiffs were not provided with any health insurance benefits or other union benefits by Local 32BJ, although Defendants deducted Local 32BJ dues from the paychecks of Plaintiff Ezekiel Mayers.

<u>PLAINTIFF ALONZO HERRERA</u>

232.    Defendants failed to pay overtime wages as required under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* and the various wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 552 *et seq.* to Plaintiff Alonzo Herrera.

233.    Plaintiff Alonzo Herrera is entitled to receive liquidated damages and reasonable attorneys' fees under the FLSA and the New York Labor Law § 190, *et seq.* ("NYLL"),

234.    Defendants failed to pay spread-of-hours pay as required by the NYLL to Plaintiff Alonzo Herrera.

235.    Plaintiff Alonzo Herrera is entitled to receive pre and post-judgment interest as provided by applicable laws.

236.    Defendants failed to comply with the notice / recordkeeping requirements mandated by law and Plaintiff Alonzo Herrera is entitled to recover from Defendants for same.

237.    Plaintiff Alonzo Herrera was terminated from employment by, upon information and belief, the Corporate Defendants on or about August 2, 2018.

238.    Plaintiff Alonzo Herrera had been the superintendent of the residential apartment building located at 1995 Creston Avenue and 1985 Creston Avenue, Bronx, New York, each containing approximately forty two (42) residential apartments for approximately fifteen (15) years.

239.    Upon information and belief, between January 5, 2014 and the date of his

termination of employment, Plaintiff Alonzo Herrera was employed by and/or managed by the Corporate Defendants.

240.    The reasons why Defendants terminated Plaintiff Alonzo Herrera was pretextual and retaliatory.

241.    Plaintiff Alonzo Herrera did not fail to follow directions and supervision from his building agent, did not fail to complete tasks within the required time, and did not fail to follow directions to complete tasks within the required time.

242.    Plaintiff Alonzo Herrera was terminated because he was not paid overtime wages that he was entitled to receive, was having illegal payroll deductions taken from his pay, and Defendants desired to hire non-union, lower paid employees to do the work that Plaintiff Alonzo Herrera performed for Defendants.

243.    Plaintiff Alonzo Herrera was asked to work and did in fact work at times more than eight hours per day and was on call for problems at the building that he was the superintendent of and at times had to work after he had worked eight hours in the same day.

244.    Defendants did not pay Plaintiff Alonzo Herrera for the overtime hours that he worked beyond forty hours per week and did not pay Plaintiff Alonzo Herrera for the times when he was on-call and had to perform work, labor and services for Defendants beyond the forty hours per week that he was paid to work.

245.    Plaintiff Alonzo Herrera was not paid for holiday time and actual overtime hours worked.

246.    Plaintiff Alonzo Herrera was told by Jamal Allah and/or Glenroy Fray, and other individuals working for Corporate Defendants and by agents of Corporate Defendants, that he was not to record actual hours worked, but that no matter how many hours in excess of forty

hours that Plaintiff Alonzo Herrera would only be paid for possibly four hours overtime on holidays even if he worked more hours, which he did work.

247.    Defendants wrongfully deducted Local 32BJ dues from the paychecks of Plaintiff Alonzo Herrera when in fact Defendants no longer had a contract with Local 32BJ and Local 32BJ were not representing Plaintiff Alonzo Herrera.

248.    Plaintiffs were not provided with any health insurance benefits or other union benefits by Local 32BJ, although Defendants deducted Local 32BJ dues from the paychecks of Plaintiff Alonzo Herrera.

<u>PLAINTIFF MICHAEL KERR</u>

249.    Defendants failed to pay overtime wages as required under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* and the various wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 552 *et seq.* to Plaintiff Michael Kerr.

250.    Plaintiff Michael Kerr is entitled to receive liquidated damages and reasonable attorneys' fees under the FLSA and the New York Labor Law § 190, *et seq.* ("NYLL"),

251.    Defendants failed to pay spread-of-hours pay as required by the NYLL to Plaintiff Michael Kerr.

252.    Plaintiff Michael Kerr is entitled to receive pre and post-judgment interest as provided by applicable laws.

253.    Defendants failed to comply with the notice / recordkeeping requirements mandated by law and Plaintiff Michael Kerr is entitled to recover from Defendants for same.

254.    Plaintiff Michael Kerr was terminated from employment by, upon information and belief, the Corporate Defendants on or about August 3, 2018.

255.    Plaintiff Michael Kerr had been the porter of the residential apartment building

located at 1789 Davidson Avenue and 1800 Davidson Avenue, Bronx, New York, for approximately two (2) years.

256.    Upon information and belief, between January 5, 2014 and the date of his termination of employment, Plaintiff Michael Kerr was employed by and/or managed by the Corporate Defendants.

257.    The reasons why Defendants terminated Plaintiff Michael Kerr was pretextual and retaliatory.

258.    Plaintiff Michael Kerr did not fail to follow directions and supervision from his building agent, did not fail to complete tasks within the required time, and did not fail to follow directions to complete tasks within the required time.

259.    Plaintiff Michael Kerr was terminated because he was not paid overtime wages that he was entitled to receive, was having illegal payroll deductions taken from his pay, and Defendants desired to hire non-union, lower paid employees to do the work that Plaintiff Michael Kerr performed for Defendants.

260.    Plaintiff Michael Kerr was asked to work and did in fact work at times more than eight hours per day and was on call for problems at the building that he was the superintendent of and at times had to work after he had worked eight hours in the same day.

261.    Defendants did not pay Plaintiff Michael Kerr for the overtime hours that he worked beyond forty hours per week and did not pay Plaintiff Michael Kerr for the times when he was on-call and had to perform work, labor and services for Defendants beyond the forty hours per week that he was paid to work.

262.    Plaintiff Michael Kerr was not paid for holiday time and actual overtime hours worked.

263.    Plaintiff Michael Kerr was told by Jamal Allah and/or Glenroy Fray, and other individuals working for Corporate Defendants and by agents of Corporate Defendants, that he was not to record actual hours worked, but that no matter how many hours in excess of forty hours that Plaintiff Michael Kerr would only be paid for possibly four hours overtime on holidays even if he worked more hours, which he did work.

264.    Defendants wrongfully deducted Local 32BJ dues from the paychecks of Plaintiff Michael Kerr when in fact Defendants no longer had a contract with Local 32BJ and Local 32BJ were not representing Plaintiff Michael Kerr.

265.    Plaintiffs were not provided with any health insurance benefits or other union benefits by Local 32BJ, although Defendants deducted Local 32BJ dues from the paychecks of Plaintiff Michael Kerr.

**FIRST CLAIM FOR RELIEF**
(FLSA Minimum Wage Violations against all Defendants
under 29 U.S.C. § 201 *et. seq.*)

266.    Plaintiffs repeat and reallege paragraphs "1" through "265" as if fully set forth herein.

267.    At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce", within the meaning of the FLSA.  At all relevant times, Defendants employed the Plaintiffs as their "employee".

268.    Throughout the relevant statute of limitations period, Defendants knowingly failed to pay Plaintiffs the federal minimum wage for each hour worked.

269.    Defendants have failed to compensate Plaintiffs at the applicable hourly minimum wage for all hours worked, in violation of 29 U.S.C. §206(a).

270.    Defendants' failure to pay Plaintiffs the required minimum wage was willful under 29 U.S.C. §255(a). Defendants were the only parties in control of Plaintiffs wages, hourly rates, work schedule, and payments.

271.    Plaintiffs were regularly instructed to either show up to the buildings owned by the defendants to work at or be on call for work.

272.    Plaintiffs were regularly not paid an hourly wage for time worked if their weekly hours exceeded 40 hours.

273.    Defendants failure to compensate the plaintiffs an hourly wage for time worked illustrates a failure to meet the minimum wage standard for labor perform, set by 29 U.S.C. §206(a)

274.    Defendants' control of the wages, scheduling, and compensation along with their failure to compensate the Plaintiffs for hours worked indicate knowledge and or reckless disregard as to whether their conduct was illegal. Defendants failed to take any steps to determine the dictates of the FLSA, NYLL and/or the legality of their practices and thereafter act to comply with same. Defendants had no good faith basis or reasonable grounds for believing that their failure to pay proper wages was in compliance with the law.  Defendants' conduct was unlawful, intentional and willful and was carried out in bad faith.

275.    Due to these FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, all in an amount to be determined at trial.

276.    Plaintiffs seeks damages in the amount of his unpaid minimum wage compensation, liquidated damages as provided by the FLSA for minimum wage violations,

attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

277.    Due to these FLSA violations, the Collective Action members and the Class are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages and an equal amount in the form of liquidated damages as well as reasonable attorneys' fees and costs of the action, all in an amount to be determined at trial.

SECOND CLAIM FOR RELIEF
(New York State Minimum Wage Violations against all Defendants under NYLL § 650 *et. seq.*)

278.    Plaintiffs repeat and reallege paragraphs "1" through "277" as if fully set forth herein.

279.    Throughout the relevant statute of limitations period, Defendants did not pay Plaintiffs the New York minimum wage of $11.00 an hour for all hours worked.

280.    Defendants' failure to pay Plaintiffs the New York minimum wage was willful.

281.    Plaintiffs seeks damages in the amount of his unpaid minimum wage compensation, liquidated damages as provided by the New York Labor Law for minimum wage violations, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

THIRD CLAIM FOR RELIEF
(FLSA Overtime Violations against all Defendants)

282.    Plaintiffs repeat and reallege paragraphs "1" through "281" as if fully set forth herein.

283.    Defendants are employers within the meaning of 29 U.S.C. § 203(e) and 206(a), and employed Plaintiff.

284.    Pursuant to 29 U.S.C. §207(a)(1) of the FLSA, Defendants were required to pay

Plaintiffs overtime compensation at a rate of one and one-half times either their regular rate of pay or the minimum wage, whichever was higher, for each hour that they worked at the Buildings, including time periods that they were "on-call" in excess of forty hours in a workweek.

285.   Defendants failed to pay Plaintiffs the overtime wages to which he was entitled under the FLSA.

286.   Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs overtime wages.

287.   Defendants failed to pay Plaintiffs wages for overtime hours worked and therefore violated 29 U.S.C. §207(a)(1) of the FLSA.

288.   Due to Defendants' violations of the FLSA, Plaintiffs are entitled to recover unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

289.   Wherefore, Plaintiffs seek a judgment against all Defendants for all wages which should have been paid, but were not paid, pursuant to the FLSA; the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, Plaintiff, along with an award of liquidated damages, interest, attorneys' fees, and costs as provided for under the FLSA.

FOURTH CLAIM FOR RELIEF
(New York State Overtime Violations against all Defendants under NYLL and N.Y.
Comp. Codes R. & Regs., tit. 12, § 142-3.2)

290.   Plaintiffs repeat and reallege paragraphs "1" through "289" as if fully set forth herein.

291.   Defendants are employers within the meaning of the NYLL § 190, 651(5), 652,

12 NYCRR §146-1.4, and supporting New York State Department of Labor Regulations, and employed Plaintiffs.

292.    Under the NYLL and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiffs one and one-half (1 ½) times the regular rate of pay for all hours they worked in excess of forty.

293.    Defendants failed to pay Plaintiffs the overtime wages to which Plaintiffs were entitled under the NYLL.

294.    Defendants willfully violated the NYLL by knowingly and intentionally failing to pay the Plaintiffs overtime wages.

295.    Due to these violations of the NYLL, the Collective Action members and the Class are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages and an amount equal to one hundred percent of their unpaid overtime wages in the form of liquidated damages as well as reasonable attorneys' fees and costs of the action, and pre-judgment interest, all in an amount to be determined at trial.

296.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages and pre-judgment and post-judgment interest.

FIFTH CLAIM FOR RELIEF<br>(<u>New York Spread of Hours Provisions against all Defendants</u>)

297.    Plaintiffs repeat and reallege paragraphs "1" through "296" as if fully set forth herein.

298.    Plaintiff's daily shift regularly lasted more than ten (10) hours per day.

299.    Under New York law, an employee is entitled to an extra one hour of wages for any day when the employee's "spread of hours" exceeds ten hours. Spread of hours is defined as

the interval between the beginning and end of the workday. 12 NYCRR §146-1.6.

300.    The NYLL and supporting New York State Department of Labor Regulations, require that employers pay employees one additional hour's pay at the full minimum wage for each workday that exceeds ten (10) hours.

301.    Defendants regularly required Plaintiffs to work in excess of ten hours in a day throughout their employment, including for the past six years.

302.    Defendants did not provide the required additional spread of hours compensation for any days during which the spread of hours worked by Plaintiffs exceeded ten hours.

303.    Defendants willfully and intentionally failed to compensate Plaintiffs with an additional one hour's pay at the full minimum wage for each day his workday exceeded ten (10) hours, as required spread-of-hours pay under the NYLL and New York State Department of Labor Regulations.

304.    Defendants' violations of the NYLL were willful.

305.    Due to defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, all spread of hours payments in the form of one hour of additional pay at the minimum wage rate for each day in which Plaintiffs had a spread of hours in excess of ten hours, in an amount prescribed by statute, reasonable attorneys' fees and costs of the action, pre-judgment and post-judgment interest, and liquidated damages.

306.    Due to these violations of the NYLL, the Collective Action members and the Class are entitled to recover from Defendants, jointly and severally, all spread of hours payments in the form of one hour of additional pay at the minimum wage rate for each day in which Plaintiffs had a spread of hours in excess of ten hours, liquidated damages, as well as reasonable attorneys' fees and costs of this action, and pre-judgment interest, all in an amount to be

determined at trial.

SIXTH CLAIM FOR RELIEF
(New York Notice Requirements under NYLL and
New York State Wage Theft Prevention Act)

307.    Plaintiffs repeat and reallege paragraphs "1" through "306" as if fully set forth herein.

308.    The NYLL and Wage Theft Prevention Act require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.  Since its enactment on April 9, 2011, the Wage Theft Prevention Act also required employers to provide an annual written notice of wages to be distributed on or before February 1st of each year of employment.

309.    Defendants violated NYLL § 195(1) by failing to furnish plaintiff, at the time of hiring and on or before February 1st of each subsequent year of employment, with a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

310.    Due to Defendants' violation of NYLL § 195(1), Plaintiffs are entitled to recover from defendants liquidated damages of $50.00 per day that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

311.    The NYLL and Wage Theft Prevention Act require all employers to provide an accompanying wage statement each time employees are paid.

312.    Defendants violated NYLL § 195(3) by failing to furnish Plaintiffs with each payment of wages a statement listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

313.    Due to defendants' violation of NYLL § 195(3), Plaintiffs are entitled to recover from the defendants liquidated damages of $250 per workday that the violation occurred, up to a maximum of $5,000, reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

314.    Defendants are liable to each Collective Action member and each member of the Class in the amount of $5,000.00, with costs and attorneys' fees and pre-judgment interest, all in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### (Quantum Meruit)

315.    Plaintiffs repeat and reallege paragraphs "1" through "314" as if fully set forth herein.

316.    By working at the Buildings, Plaintiffs performed services in good faith for the benefit of Defendants, who undoubtedly accepted those services by allowing Plaintiffs to continue working at the Buildings for many years.

317.    In performing these services, Plaintiffs expected to be compensated for all of the hours of hard work they invested for the benefit of Defendants.

318.    The reasonable value of the Plaintiffs' services are, at a minimum, the amount that an employed person would be required to receive under the federal and state wage laws.

319.    The reasonable hourly wage for Plaintiffs' services is at least the hourly minimum wage required to be paid for regular and overtime hours during the time of the work performed under federal and state laws.

320.    Plaintiffs are entitled to be paid for all of the hours that they were "on-call" to work for the Defendants.

321.    Plaintiffs are entitled to be paid for all of the hours that they were "on-call", required to be present at the Buildings and not permitted to leave the Buildings so that they would be available day or night for emergencies and other needs of the Defendants and the tenants of Defendants.

322.    Defendants are therefore liable to Plaintiffs in quantum meruit for the reasonable value of services that they performed at the Buildings.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs respectfully pray for relief as follows, judgment:

a.    Judgment on the first claim for relief in an amount to be determined at trial in this action;

b.    Judgment on the second claim for relief in an amount to be determined at trial in this action;

c.    Judgment on the third claim for relief in an amount to be determined at trial in this action;

d.    Judgment on the fourth claim for relief in an amount to be determined at trial in this action;

48

e.       Judgment on the fifth claim for relief in an amount to be determined at trial in this action;

f.       Judgment on the sixth claim for relief in an amount to be determined at trial in this action;

g.       Judgment on the seventh claim for relief in an amount to be determined at trial in this action;

h.       Declaring Defendants' conduct to be in violation of Plaintiffs' rights under the FLSA and NYLL;

i.       Awarding Plaintiffs compensatory damages in an amount to be determined at trial, to be paid by Defendants;

j.       Awarding Plaintiffs liquidated damages and penalties available under applicable laws;

k.       Awarding Plaintiffs pre-judgment and post-judgment interest, as provided by law; and

l.       Awarding Plaintiffs their costs of action incurred herein, including expert fees;

m.       Awarding Plaintiffs' attorneys' fees, including fees pursuant to the FLSA, NYLL, 29 U.S.C. § 216, and other applicable statutes;

n.      Awarding Plaintiffs such other and further legal and equitable relief as this Court

deems necessary, just, and proper.

Dated:  December 11, 2019
          Great Neck, New York

_____
GARY ROSEN, ESQ. (GR-8007)
ROSEN LAW LLC
Attorneys for Plaintiffs
216 Lakeville Road,
Great Neck, New York 11020
(516) 437-3400

CONSENT TO BECOME A PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Defendant Cornell Pace Inc., Defendant Mount Hope Management Inc.,   Defendant The Mount Hope Housing Company Inc., Defendant Prestige Management Inc., Defendant MHPA 2A Maintenance LLC, and Defendant Mount Hope Preservation Apartments 2A LLC, Fritz Jean, Glen Roy and Jamal Allah, to pay me overtime wages, and/or minimum wages as required under state and/or federal law, and I also authorize the filing of this consent in the action challenging such conduct. Through this consent, I authorize the filing and prosecution of this action in my name and on behalf of all other persons similarly situated to me.

Dated: December 11, 2019

Alonzo Herrera

CONSENT TO BECOME A PARTY PLAINTIFF


By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Defendant Cornell Pace Inc., Defendant Mount Hope Management Inc.,  Defendant The Mount Hope Housing Company Inc., Defendant Prestige Management Inc., Defendant MHPA 2A Maintenance LLC, and Defendant Mount Hope Preservation Apartments 2A LLC, Fritz Jean, Glen Roy and Jamal Allah, to pay me overtime wages, and/or minimum wages as required under state and/or federal law, and I also authorize the filing of this consent in the action challenging such conduct. Through this consent, I authorize the filing and prosecution of this action in my name and on behalf of all other persons similarly situated to me.

Dated: December 11, 2019

Felix Castillo

1

CONSENT TO BECOME A PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Defendant Cornell Pace Inc., Defendant Mount Hope Management Inc.,   Defendant The Mount Hope Housing Company Inc., Defendant Prestige Management Inc., Defendant MHPA 2A Maintenance LLC, and Defendant Mount Hope Preservation Apartments 2A LLC, Fritz Jean, Glen Roy and Jamal Allah, to pay me overtime wages, and/or minimum wages as required under state and/or federal law, and I also authorize the filing of this consent in the action challenging such conduct. Through this consent, I authorize the filing and prosecution of this action in my name and on behalf of all other persons similarly situated to me.

Dated: December 11, 2019

_Jose Collazo_ (signature)
Jose Collazo

CONSENT TO BECOME A PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Defendant Cornell Pace Inc., Defendant Mount Hope Management Inc., Defendant The Mount Hope Housing Company Inc., Defendant Prestige Management Inc., Defendant MHPA 2A Maintenance LLC, and Defendant Mount Hope Preservation Apartments 2A LLC, Fritz Jean, Glen Roy and Jamal Allah, to pay me overtime wages, and/or minimum wages as required under state and/or federal law, and I also authorize the filing of this consent in the action challenging such conduct. Through this consent, I authorize the filing and prosecution of this action in my name and on behalf of all other persons similarly situated to me.

Dated: December 11, 2019

Everton Harris

5

CONSENT TO BECOME A PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Defendant Cornell Pace Inc., Defendant Mount Hope Management Inc., Defendant The Mount Hope Housing Company Inc., Defendant Prestige Management Inc., Defendant MHPA 2A Maintenance LLC, and Defendant Mount Hope Preservation Apartments 2A LLC, Fritz Jean, Glen Roy and Jamal Allah, to pay me overtime wages, and/or minimum wages as required under state and/or federal law, and I also authorize the filing of this consent in the action challenging such conduct. Through this consent, I authorize the filing and prosecution of this action in my name and on behalf of all other persons similarly situated to me.

Dated: December 11, 2019

_____
Michael Kerr

7

CONSENT TO BECOME A PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Defendant Cornell Pace Inc., Defendant Mount Hope Management Inc.,  Defendant The Mount Hope Housing Company Inc., Defendant Prestige Management Inc., Defendant MHPA 2A Maintenance LLC, and Defendant Mount Hope Preservation Apartments 2A LLC, Fritz Jean, Glen Roy and Jamal Allah, to pay me overtime wages, and/or minimum wages as required under state and/or federal law, and I also authorize the filing of this consent in the action challenging such conduct. Through this consent, I authorize the filing and prosecution of this action in my name and on behalf of all other persons similarly situated to me.

Dated: December 11, 2019

_Ezekiel Mayers_
Ezekiel Mayers

CONSENT TO BECOME A PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Defendant Cornell Pace Inc., Defendant Mount Hope Management Inc., Defendant The Mount Hope Housing Company Inc., Defendant Prestige Management Inc., Defendant MHPA 2A Maintenance LLC, and Defendant Mount Hope Preservation Apartments 2A LLC, Fritz Jean, Glen Roy and Jamal Allah, to pay me overtime wages, and/or minimum wages as required under state and/or federal law, and I also authorize the filing of this consent in the action challenging such conduct. Through this consent, I authorize the filing and prosecution of this action in my name and on behalf of all other persons similarly situated to me.

Dated: December 11, 2019

_____
Gustavo Cervantes

CONSENT TO BECOME A PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Defendant Cornell Pace Inc., Defendant Mount Hope Management Inc.,   Defendant The Mount Hope Housing Company Inc., Defendant Prestige Management Inc., Defendant MHPA 2A Maintenance LLC, and Defendant Mount Hope Preservation Apartments 2A LLC, Fritz Jean, Glen Roy and Jamal Allah, to pay me overtime wages, and/or minimum wages as required under state and/or federal law, and I also authorize the filing of this consent in the action challenging such conduct. Through this consent, I authorize the filing and prosecution of this action in my name and on behalf of all other persons similarly situated to me.

Dated: December 11, 2019

_____
Anthony Forbes

4