UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X

FELIX CASTILLO, GUSTAVO CERVANTES, JOSE
COLLAZO, ANTHONY FORBES, EVERTON HARRIS,
ALONZO HERRERA, MICHAEL KERR and EZEKIEL
MAYERS, Individually and on behalf of All Other Persons
Similarly Situated,

                                                   Plaintiffs,

                      -against-

CORNELL PACE INC., MHPA 2A MAINTENANCE LLC,
MOUNT HOPE MANAGEMENT INC.,
MOUNT HOPE HOUSING COMPANY INC.,
MOUNT HOPE PRESERVATION APARTMENTS 2A LLC,
PRESTIGE MANAGEMENT INC.,
THE MOUNT HOPE HOUSING COMPANY INC.,
FRITZ JEAN, GLENROY FRAY, JAMAL ALLAH,
CORNELL PACE, JOHN DOE # 1, JOHN DOE # 2,
JOHN DOE # 3, JOHN DOE # 4, AND JOHN DOE # 5,
JOHN DOE # 6, JOINTLY AND SEVERALLY,

                                                   Defendants.

Case No.: 1:20-cv-00060-AJN

-------------------------------------------------------------------------------X

## SETTLEMENT AGREEMENT & GENERAL RELEASE

       **WHEREAS**, on January 5, 2020, Plaintiffs Felix Castillo, Gustavo Cervantes, Jose Collazo, Anthony Forbes, Everton Harris, Alonzo Herrera, Michael Kerr and Ezekiel Mayers, their heirs, executors, administrators, successors and assigns (collectively "Plaintiffs") filed a Complaint in the United States District Court Southern District of New York, Civil Action No. 1:20-cv-00060 (the "Complaint") asserting wage payment claims in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against and Defendants, Cornell Pace Inc., MHPA 2A Maintenance LLC and Mount Hope Preservation Apartments 2A LLC (collectively "Defendants") (together, the "Parties").

       **WHEREAS**, the parties participated in a Settlement Conference before Magistrate Judge Sarah Netburn on September 29, 2020, wherein Plaintiffs, through counsel, advised that the Plaintiffs would seek to amend the Complaint to assert various additional non-wage claims against Defendants.

       **WHEREAS**, Plaintiffs and Defendants have chosen to enter into this Settlement Agreement & General Release ("Agreement") to avoid further proceedings with respect to any

and all of Plaintiffs' asserted and unasserted claims under the FLSA and the NYLL, as well as any other claims relating to or arising out of their employment and/or alleged employment with Defendants, in this Lawsuit or that Plaintiffs could assert in any other case or forum. Plaintiffs enter this Agreement intending to settle, bar and waive any and all such claims that Plaintiffs have or may have against Defendants;

**WHEREAS**, a *bona fide* dispute exists as to Plaintiffs' claims for alleged unpaid minimum wage and overtime wages;

**WHEREAS**, Plaintiffs and Defendants understand and agree that neither the making of this Agreement nor anything contained herein shall be construed or considered in any way to be an admission by Defendants or any other person or entity of guilt or noncompliance with any federal, state or local statute, order, regulation or ordinance, public policy, tort law, contract (whether oral or written, express or implied), common law, Plaintiffs' alleged employer's policies, practices, benefit plans, compensation plans or procedures, or of any other wrongdoing whatsoever; and,

**WHEREAS**, the Parties wish to resolve any and all disputes that exist between and among them up to and including the date that this Agreement is signed.

**NOW, THEREFORE**, in consideration of the mutual promises contained herein, the Parties agree as follows.

    **1.**    <u>**Consideration.**</u> In consideration for Plaintiffs signing this Settlement Agreement and General Release ("Agreement"), their withdrawal and discontinuance of the above action with prejudice, and complying with the promises made by them contained in this Agreement, including the general release and waiver of claims, Defendants agree to provide Plaintiffs with the total settlement sum of Forty Five Thousand Dollars and Zero Cents ($45,000.00) to be apportioned and paid as described below, within thirty-five (30) days after the Court's approval of this Agreement. The Parties will jointly submit this Agreement to the Court for approval within five (5) business days of Defendants' receipt of an original of this Agreement executed by all Plaintiffs, a copy of IRS Forms W-4 and W-9 properly completed by each Plaintiff, and a copy of an IRS Form W-9 properly completed by Plaintiffs' counsel:

    a.    One check payable to "Rosen Law LLC" in the amount of Fifteen Thousand Dollars and Zero Cents ($15,000.00), apportioned as payment for attorney's fees and costs. IRS Forms 1099-MSC will be issued to Rosen Law LLC and Plaintiffs in connection with this payment.

    b.    One check payable to "Felix Castillo" in the amount of Seven Hundred Fifty Dollars and Zero Cents ($750.00), less applicable taxes, withholdings, and deductions, apportioned as payment for any alleged lost back pay, front pay or benefits. An IRS Form W-2 will be issued to Felix Castillo in connection with this payment;

    c.    One check payable to "Felix Castillo" in the amount of Three Thousand Dollars and Zero Cents ($3,000.00), for alleged emotional distress and

        other damages. An IRS Form 1099 will be issued to Felix Castillo in connection with this payment, and Felix Castillo understands he is responsible for any and all tax payments related to this payment;

    d.    One check payable to "Gustavo Cervantes" in the amount of Seven Hundred Fifty Dollars and Zero Cents ($750.00), less applicable taxes, withholdings, and deductions, apportioned as payment for any alleged lost back pay, front pay or benefits. An IRS Form W-2 will be issued to Gustavo Cervantes in connection with this payment;

    e.    One check payable to "Gustavo Cervantes" in the amount of Three Thousand Dollars and Zero Cents ($3,000.00), for alleged emotional distress and other damages. An IRS Form 1099 will be issued to Gustavo Cervantes in connection with this payment, and Gustavo Cervantes understands he is responsible for any and all tax payments related to this payment;

    f.    One check payable to "Jose Collazo" in the amount of Seven Hundred Fifty Dollars and Zero Cents ($750.00), less applicable taxes, withholdings, and deductions, apportioned as payment for any alleged lost back pay, front pay or benefits. An IRS Form W-2 will be issued to Jose Collazo in connection with this payment;

    g.    One check payable to "Jose Collazo" in the amount of Three Thousand Dollars and Zero Cents ($3,000.00), for alleged emotional distress and other damages. An IRS Form 1099 will be issued to Jose Collazo in connection with this payment, and Jose Collazo understands he is responsible for any and all tax payments related to this payment;

    h.    One check payable to "Anthony Forbes" in the amount of Seven Hundred Fifty Dollars and Zero Cents ($750.00), less applicable taxes, withholdings, and deductions, apportioned as payment for any alleged lost back pay, front pay or benefits. An IRS Form W-2 will be issued to Anthony Forbes in connection with this payment;

    i.    One check payable to "Anthony Forbes" in the amount of Three Thousand Dollars and Zero Cents ($3,000.00), for alleged emotional distress and other damages. An IRS Form 1099 will be issued to Anthony Forbes in connection with this payment, and Anthony Forbes understands he is responsible for any and all tax payments related to this payment;

    j.    One check payable to "Everton Harris" in the amount of Seven Hundred Fifty Dollars and Zero Cents ($750.00), less applicable taxes, withholdings, and deductions, apportioned as payment for any alleged lost back pay, front pay or benefits. An IRS Form W-2 will be issued to Everton Harris in connection with this payment;

k. One check payable to "Everton Harris" in the amount of Three Thousand Dollars and Zero Cents ($3,000.00), for alleged emotional distress and other damages. An IRS Form 1099 will be issued to Everton Harris in connection with this payment, and Everton Harris understands he is responsible for any and all tax payments related to this payment;

l. One check payable to "Alonzo Herrera" in the amount of Seven Hundred Fifty Dollars and Zero Cents ($750.00), less applicable taxes, withholdings, and deductions, apportioned as payment for any alleged lost back pay, front pay or benefits. An IRS Form W-2 will be issued to Alonzo Herrera in connection with this payment;

m. One check payable to "Alonzo Herrera" in the amount of Three Thousand Dollars and Zero Cents ($3,000.00), for alleged emotional distress and other damages. An IRS Form 1099 will be issued to Alonzo Herrera in connection with this payment, and Alonzo Herrera understands he is responsible for any and all tax payments related to this payment;

n. One check payable to "Michael Kerr" in the amount of Seven Hundred Fifty Dollars and Zero Cents ($750.00), less applicable taxes, withholdings, and deductions, apportioned as payment for any alleged lost back pay, front pay or benefits. An IRS Form W-2 will be issued to Michael Kerr in connection with this payment;

o. One check payable to "Michael Kerr" in the amount of Three Thousand Dollars and Zero Cents ($3,000.00), for alleged emotional distress and other damages. An IRS Form 1099 will be issued to Michael Kerr in connection with this payment, and Michael Kerr understands he is responsible for any and all tax payments related to this payment;

p. One check payable to "Ezekiel Mayers" in the amount of Seven Hundred Fifty Dollars and Zero Cents ($750.00), less applicable taxes, withholdings, and deductions, apportioned as payment for any alleged lost back pay, front pay or benefits. An IRS Form W-2 will be issued to Ezekiel Mayers in connection with this payment; and

q. One check payable to "Ezekiel Mayers" in the amount of Three Thousand Dollars and Zero Cents ($3,000.00), for alleged emotional distress and other damages. An IRS Form 1099 will be issued to Ezekiel Mayers in connection with this payment, and Ezekiel Mayers understands he is responsible for any and all tax payments related to this payment.

2. **No Consideration Absent Execution of this Agreement.** Plaintiffs understand and agree that Plaintiffs would not receive the monies specified in Paragraph 1 above, except for Plaintiffs' execution of this Agreement and the fulfilment of the promises contained herein.

      **3.** **Tax Indemnification.** Plaintiffs acknowledge that they bear the responsibility to pay any and all taxes that may be due on the settlement payments to them in Paragraph 1, except for the employer portion of withholdings for FICA, FUTA and/or Medicare on the payments in Paragraphs 1(b), (d), (f), (h), (j), (l), (n), and (p). Plaintiffs acknowledge that they have not relied on any oral or other representations made by Defendants or anyone else on their behalf or their counsel regarding the tax consequences of any amounts paid pursuant to this Agreement. Plaintiffs further agree that they will indemnify Defendants for any and all tax payments, interest and penalties that may come due on failure to pay taxes on the payments to them in Paragraph 1. Notwithstanding the foregoing, Defendants are responsible for paying the employer's share of payroll taxes (e.g., FICA and FUTA) on the payment in Paragraphs 1(b), (d), (f), (h), (j), (l), (n), and (p), and Plaintiffs do not agree to indemnify Defendants for any unpaid employer portion of withholdings (e.g., FICA, FUTA, and/or Medicare) on the payments in Paragraphs 1(b), (d), (f), (h), (j), (l), (n), and (p).

      **4.** **General Release of All Claims.**

      a. Except for the terms, rights and obligations set forth in this Agreement, Plaintiffs for themselves and on behalf of any of their respective present or former spouse(s), dependents, heirs, assigns, lien holders, fiduciaries, executors, administrators, successors, creditors, debtors, and counsel voluntarily release and forever discharge Cornell Pace Inc., MHPA 2A Maintenance LLC and Mount Hope Preservation Apartments 2A LLC, and any of their respective predecessors and successors, and any other person or entity that Plaintiffs claim or may claim to have been their employer for purposes of their respective employers with respect to the allegations and/or time periods alleged in the above-captioned lawsuit (herein "Releasees"), both individually and in their official and/or representative capacities of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, claims, charges, complaints, appeals and demands whatsoever (to the extent such claims may be legally waived), in law or equity, which any Plaintiff has or may have against the Releasees as of the date of execution of this Agreement, whether known or unknown, asserted or unasserted, without limitation, all claims for any alleged violation of:

- Title VII of the Civil Rights Act of 1964;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Americans with Disabilities Act of 1990;

- The Workers Adjustment and Retraining Notification Act;

- The Family and Medical Leave Act;

- The Immigration Reform and Control Act;

- The Fair Credit Reporting Act;

- The Sarbanes-Oxley Act of 2002, to the extent permitted by law;

- any claims arising under or pursuant to the United States Constitution;

- the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq.;

- the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.;

- the Equal Pay Act;

- the Genetic Information Nondiscrimination Act of 2008;

- the Immigration Reform and Control Act;

- the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161 et seq.;

- I.R.C. § 4980B;

- the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.;

- the False Claims Act, 31 U.S.C. § 3729 et seq.;

- the New York Minimum Wage Law and all wage orders;

- the New York Wage and Wage Payment laws, including Sections 190 et seq. of the Labor Law;

- the New York State Human Rights Law, New York Executive Law § 290 et seq.;

- the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.;

- Article 6 of the New York Labor Law, New York Labor Law § 190 et seq.;

- the New York Whistleblower Law, New York Labor Law § 740 et seq.;

- the New York Legal Activities Law; New York Labor Law § 201-d;

- the New York State Workers Adjustment and Retraining Notification Act;

- the New York occupational safety and health laws;

- the retaliation provisions of the New York State Workers' Compensation and Disability Benefits Laws;

- the New York Fair Credit Reporting Act;

- the New York City Human Rights Law;

- the New York City Administrative Code and Charter;

- Any other federal, state or local law, regulation or ordinance;

- Any obligation or claim arising under any public policy, contract (express or implied, written or oral), tort, or common law, including but not limited to, wrongful discharge, libel, slander, defamation, emotional distress, and/or misrepresentation, whether oral or written; and

- Any allegation for costs, attorney's fees, or other expenses.

    b.  If any claim is not subject to release, to the extent permitted by law, Plaintiffs waive any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Defendants or any other Releasee identified in this Agreement is a party.

    c.  Notwithstanding the foregoing, Plaintiffs are not waiving: (i) their right to vested benefits under the written terms of any 401(k) Plan or any other retirement plan or program, (ii) claims for unemployment, disability, or workers' compensation benefits, (iii) any medical claim incurred during their employment that is payable under applicable medical plans or an employer-insured liability plan, (iv) claims to enforce this Agreement, (v) claims arising after the date on which they sign this Agreement, or (vi) claims that are not otherwise waivable under applicable law.

    d.  Nothing in this Agreement prohibits or prevents Plaintiffs from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state or local government agency (e.g., EEOC, NLRB, SEC, etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Plaintiffs' rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Plaintiffs agree that if such administrative claim is made, Plaintiffs shall not be entitled to recover any individual monetary relief or other individual remedies. This Agreement does not limit Plaintiffs' right to receive an award from any self-regulatory authority or government agency or entity that provides awards for providing information relating to a potential violation of law.

    5.  **Withdrawal of Claims.** In consideration for this Agreement, Plaintiffs agree to discontinue and withdraw, with prejudice, the above action, and to execute, either personally or by her counsel, any documents necessary to effectuate the discontinuance of this action.

    6.  **Acknowledgments and Affirmations.**

    a.  Plaintiffs affirm they have not filed, caused to be filed, and presently are not a party to any claim against Defendants, except for the above action, which they have agreed to jointly request to be dismissed with prejudice. Plaintiffs further affirm that upon receipt of the payments in Paragraph 1, they have been paid and/or have received all compensation, wages, bonuses, and/or benefits to which they may be entitled.

   b. As a consequence of this settlement, Plaintiffs affirm that they have been paid and have received all compensation, wages, bonuses, commissions, benefits, and other monies to which they alleged they were entitled under the FLSA, the NYLL.

   c. In the event that, for any reason, any claims contained in a complaint, grievance, suit, action, charge, claim or proceeding existing as of the date of the execution of this Agreement are not wholly and finally dismissed with prejudice, then the Parties agree to jointly seek Court approval of this Agreement or any negotiated revisions thereof as may be necessary to obtain a full and final release and waiver of all such claims;

   d. Plaintiffs agree that due to irreconcilable differences between the Parties, they do not want, and they will not seek employment with Cornell Pace Inc., MHPA 2A Maintenance LLC or Mount Hope Preservation Apartments 2A LLC or their parents, subsidiaries and/or affiliates in the future. Notwithstanding the foregoing, if at any time after execution of this Agreement Cornell Pace Inc., MHPA 2A Maintenance LLC or Mount Hope Preservation Apartments 2A LLC or their related entities acquire or become affiliated with any other entity at which a Plaintiff is employed, that Plaintiff will not be required to resign or otherwise leave his employment under the terms of this Agreement.

   7. **Non-admission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by the Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

   8. **Severability and Modification.**

   a. If any provision of this Agreement is declared illegal or unenforceable by any court, administrative agency, or other entity, Plaintiffs and Defendants agree that the court, administrative agency or other entity has the full discretion to interpret or modify all such provisions to be enforceable and is directed to do so. To aid in that process, if any such provision is determined to be invalid, illegal, or unenforceable, but could be interpreted or modified to be made valid, legal, or enforceable by modification thereof, then the party for whose benefit the provision exists, may make such modification as necessary to make the provision valid, legal, enforceable, and consistent with the intent stated in this Agreement and the other party shall sign an agreement or stipulation to adopt that modification;

   b. However, if the release of claims contained herein is limited or held to be null and void, (i) this Agreement shall be interpreted to bar any claim Plaintiffs may assert; and, (ii) Plaintiffs shall execute an enforceable general and unlimited release of all claims or all monies paid hereunder shall be returned to Defendants.

   9. **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the State of New York without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, any party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.

10. **Amendment** This Agreement may not be modified, altered or changed except in writing and signed by all Parties wherein specific reference is made to this Agreement.

11. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties.  Plaintiffs acknowledge that they have not relied on any representations, promises, or agreements of any kind made to Plaintiffs in connection with Plaintiffs' decision to accept this Agreement, except for those set forth in this Agreement.

12. **Resolution of Disputes.** The judge presiding over this matter (Magistrate Judge Sarah Netburn) will retain jurisdiction over the matter for purposes of enforcement of this Agreement and its terms.  Accordingly, any controversy or claims relating to this Agreement shall be resolved in a proceeding held in and before the U.S. District Court for the Southern District of New York, by Magistrate Judge Netburn sitting without a jury, to ensure rapid adjudication of any such claims and proper application of existing law.

13. **Section Headings.** Section headings are used herein for reference only and do not affect the meaning of any provision of this Agreement.

14. **Competence to Waive Claims.**  Plaintiffs are competent to affect a knowing and voluntary general and unlimited release of all claims as referenced above and to enter into this Agreement.  Plaintiffs are not affected or impaired by illness, use of alcohol, drugs, medication or other substances or otherwise impaired.  To the contrary, they have a clear and complete understanding of this Agreement, as explained to them by their counsel.  Plaintiffs are not a party to any bankruptcy, lien, creditor-debtor or other proceeding which would impair the right to settle the Lawsuit, to waive all claims, and to indemnify Releasees from any claims by or relating to Plaintiffs.

15. **Counterparts.** This Agreement may be executed in counterparts with all counterparts constituting the entire Agreement and with the same full force and effect as if this Agreement were not executed in counterparts. Signatures that are electronic, scanned, faxed, photographed, photocopied, and/or emailed shall be considered as valid as an original written signature. Any signature made and transmitted by PDF, facsimile or e-mail or via DocuSign for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement.

16. **Execution.**

   a.   The terms of this Agreement are the product of mutual negotiation and compromise between Plaintiffs and Defendants.  The meaning, effect and terms of this Agreement have been fully explained to Plaintiffs by their counsel.  Plaintiffs fully understands that this Agreement generally releases, settles, bars and waives any and all claims that they possibly could have against Releasees relating to their employment.  Plaintiffs further represent that they are fully satisfied with the advice and counsel provided by their attorneys; and

   b.   Plaintiffs fully understand the terms of this Agreement.

**17.** **Translation.** It is further understood and agreed between the Parties that counsel for Plaintiffs shall be responsible for translating this Agreement to a language fully understood by Plaintiffs, and to fully advise Plaintiffs regarding the terms and conditions of this Agreement. Plaintiffs' counsel affirms that their office has translated and communicated to Plaintiffs the words and explained to Plaintiffs the meaning of this Agreement. Any contention that the terms and conditions of this Agreement were not translated and communicated to Plaintiffs by their counsel shall not be a basis to challenge or to set aside this Agreement.

**PLAINTIFFS ARE ADVISED THAT THEY HAVE A REASONABLE PERIOD OF TIME TO CONSIDER THIS AGREEMENT. HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS SET FORTH ABOVE, PLAINTIFFS EACH FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH THEIR COUNSEL ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY HAS OR MIGHT HAVE AGAINST RELEASEES.**

The parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

***PLAINTIFFS:***

Dated: 11/10/2020         Felix Castillo

Dated: 11/10/2020         Gustavo Cervantes

Dated: 11/9/2020          Jose Collazo

Dated: 11/13/2020         Anthony Forbes

Dated: 11/13/2020         Everton Harris

Dated: 11/14/2020         Alonzo Herrera

Dated: 11/6/2020          Michael Kerr

DocuSign Envelope ID: 99F8B88E-3FB3-4834-8603-9F584E1CF547

Dated: 11/10/2020

*DocuSigned by:*
Ezekiel Mayers

*As to Paragraph 17 only:*

ROSEN LAW LLC

Dated: 11/16/2020

By: Jared Rosen

**DEFENDANTS:**

Dated: 11/18/2020

MHPA 2A Maintenance LLC
By: Pierre Downing

Dated: 11/18/2020

Mount Hope Preservation Apartments 2A LLC
By: Pierre Downing

Dated: 11/18/2020

Cornell Pace Inc.
By: Mike Rogers

4815-4398-7149, v. 2